UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOSEPH L. S.,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. C19-5706-MLP

ORDER

## I.    INTRODUCTION

Plaintiff seeks review of the denial of his application for Social Security Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred by: (1) failing to properly evaluate the medical evidence; (2) failing to properly evaluate Plaintiff's testimony; (3) failing to properly evaluate lay witness testimony; and (4) improperly determining Plaintiff's Residual Functional Capacity ("RFC") and basing his step-five finding on that assessment. (Dkt. # 12 at 2.) Additionally, Plaintiff argues that new evidence submitted to the Appeals Council since the ALJ's determination supports remand of this matter. (*Id.*) As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

ORDER - 1

## II. BACKGROUND

Plaintiff was born in 1997, has a high school education, and has no past relevant work history. AR at 1532. Plaintiff was last gainfully employed in November 2015. *Id.* at 1707.

On December 20, 2015, Plaintiff applied for benefits, alleging disability as of December 1, 2015. AR at 1521. Plaintiff's application was denied initially on March 30, 2016, and on reconsideration on July 20, 2016, and Plaintiff requested a hearing. *Id.* After conducting a hearing on August 29, 2017, the ALJ issued a decision on January 29, 2018, finding Plaintiff was not disabled. *Id.* at 1521-33.

Utilizing the five-step disability evaluation process,[1] the ALJ found:

Step one: Plaintiff has not engaged in substantial gainful activity since December 20, 2015.

Step two: Plaintiff has the following severe impairments: depression vs. bipolar disorder, anxiety, attention deficit hyperactivity disorder ("ADHD"), and personality disorder (20 C.F.R. § 416.920(c)).

Step three: These impairments do not meet or equal the requirements of a listed impairment.[2]

Residual Functional Capacity: Plaintiff can perform a full range of work at all exertional levels, but with some nonexertional limitations, including: only simple routine and familiar detailed tasks, no fast-paced work, no teamwork, no work involving interacting with the public, and the work must involve a routine and predictable work setting.

Step four: Plaintiff does not have past relevant work history.

Step five: As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled.

AR at 1523-33.

---

[1] 20 C.F.R. § 416.920.

[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

ORDER - 2

1    As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the

2  Commissioner's final decision. AR at 1-3. Plaintiff appealed the final decision of the

3  Commissioner to this Court. (Dkt. # 4.)

4    After the ALJ's decision on January 29, 2018, Plaintiff submitted additional medical

5  record evidence to the Appeals Council. AR at 3. This evidence consisted of medical records

6  from a mental health episode dated across January 2018 through April 2018 from Virginia

7  Mason Medical Center, NAVOS, and Telecare Thurston Mason Crisis Triage, as well as medical

8  records from Hawks Prairie Internal Medicine dated during the relevant period considered by the

9  ALJ. *Id.* On May 29, 2019, the Appeals Council denied Plaintiff's request, finding the additional

10  evidence did not relate or affect the ALJ's decision through the period of January 29, 2018. *Id.*

### III.    LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id.*

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d

1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV.   DISCUSSION

### A.   The ALJ Did Not Err in Evaluating the Medical Testimony

An ALJ's reasons to discount a contradicted treating or examining physician's opinion must be specific and legitimate. *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996). In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Id.* The ALJ is responsible for resolving conflicts in medical testimony and resolving ambiguities in the evidence. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

#### 1.   *The ALJ Did Not Err in Evaluating the Opinion of Terilee Wingate, Ph.D.*

Plaintiff argues that the ALJ failed to properly evaluate the opinion of Dr. Terilee Wingate, Plaintiff's examining physician, by not including in Plaintiff's RFC all of Dr. Wingate's moderate limitations. (Dkt. # 12 at 3.) The regulations hold that a RFC is "the most" a claimant can do, and not a description of an ideal environment for the claimant. 20 C.F.R. § 416.945(a)(1). An ALJ must accurately capture the claimant's level of functioning in the RFC but need not repeat each functional limitation. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-74 (9th Cir. 2008).

Here, the ALJ reasonably incorporated the deficiencies noted in Dr. Wingate's opinion in finding Plaintiff could perform simple and familiar tasks, in a routine and predictable work setting, around or in public, but that he could not perform fast-paced work, teamwork, or interact

ORDER - 4

with the public. AR at 1526. In January 2016, Dr. Wingate reported: (1) Plaintiff would have mild to moderate limitations in mental functioning; (2) Plaintiff had a generally normal mental status examination; and (3) Plaintiff had an unimpaired ability to understand, remember, and carry out simple instructions and perform routine tasks. *Id.* at 1914-16. The ALJ gave significant weight to Dr. Wingate's opinion as Plaintiff's treating physician. AR at 1530; *see Lester*, 81 F.3d at 830-31. Plaintiff cites to other medical evidence in support of his argument. However, as Plaintiff concedes, these opinions do not include any "clear opinions of specific functional limitations" (dkt. # 12 at 6), and therefore, do not make the ALJ's interpretation of Dr. Wingate's opined moderate limitations unreasonable. Rather, Plaintiff is merely proposing a different interpretation of the evidence.

Moreover, Dr. Thomas Clifford and Dr. Jan Lewis reviewed Plaintiff's medical record, which included Dr. Wingate's opinion. AR at 1602-03, 1616-18. The ALJ determined that both Dr. Clifford's and Dr. Lewis' opinions should be afforded significant weight because they were consistent with Plaintiff's demonstrated capabilities, Plaintiff's treatment record, and Dr. Wingate's observations. *Id.* at 1530. Dr. Clifford determined that Plaintiff is capable of remembering and understanding simple work tasks, carrying out simple untimed work tasks, and interacting with the public on a limited basis, but would do best working away from the public in a daily setting. *Id.* at 1602-03. Dr. Lewis noted that Plaintiff can perform simple routine tasks, familiar detailed tasks, but should work with few co-workers and not in public. *Id.* at 1616-18.

Both Dr. Clifford and Dr. Lewis prepared opinions corresponded with Dr. Wingate's opinion of Plaintiff's limitations. *Compare Id.* at 1602-03, 1616-18 *with Id.* at 1914-1916. Therefore, the ALJ did not err because the ALJ's assessed RFC adequately captured Plaintiff's

ORDER - 5

limitations based off Dr. Wingate, Dr. Clifford, and Dr. Lewis' opinions. *See Stubbs-Danielson*, 539 F.3d at 1173-74.

        2.     *The ALJ Did Not Err in Declining to Incorporate the Recommendations of Siobhan Budwey, Ph.D. and John Holttum, M.D.*

Plaintiff argues that the ALJ failed to incorporate the medical findings and opinions of Dr. Siobhan Budwey and Dr. John Holttum. (Dkt. # 12 at 6.) Both Dr. Budwey and Dr. Holttum did not set forth any specific functional limitations in their treatment recommendations for Plaintiff's mental impairments. AR at 1951-67, 2004-16. Instead, both doctors reported Plaintiff could work, with Dr. Budwey specifically recommending part-time work as a way for Plaintiff to improve his self-confidence and social interaction skills. *Id.* at 1964, 2010.

Here, the ALJ did not incorporate both doctors' recommendations into Plaintiff's RFC because Dr. Holttum and Dr. Budwey did not provide specific functional limitations in their opinions. *Id.* at 1951-67, 2004-16. With respect to Dr. Budwey, the Court notes the ALJ explicitly determined Dr. Budwey was not assessing the most Plaintiff could do in terms of work capabilities, and instead, offering recommendations that may be helpful to Plaintiff in a therapeutic sense. *Id.* at 1531. Plaintiff additionally acknowledges in his briefing that neither Dr. Budwey nor Dr. Holttum set forth any specific functional limitations in their opinions. *See* Dkt. # 12 at 6. Accordingly, because Dr. Budwey and Dr. Holttum made only treatment recommendations, the ALJ reasonably declined to incorporate their recommendations into Plaintiff's RFC. *See Edlund*, 253 F.3d at 1156.

**B.**    **The ALJ Did Not Err in Evaluating Plaintiff's Testimony**

Plaintiff contends the ALJ generally failed to properly evaluate his testimony. (Dkt. # 12 at 6-12.) Absent affirmative evidence showing the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Burrell v. Colvin*, 775

F.3d 1133, 1136-37 (9th Cir. 2014) (citing *Molina*, 674 F.3d at 1112); *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

            *1.*     *Mental Impairment and Malingering*

First, Plaintiff argues that the ALJ generally failed to properly evaluate his testimony regarding his mental impairments. (Dkt. # 12 at 7-9.) An ALJ may consider inconsistent statements by a claimant in assessing his subjective complaints. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). Exaggerating or failing to cooperate during consultative examinations are valid reasons to discount claimant testimony. *Id.*

Plaintiff generally testified that he could not work because of his mental impairments. AR at 1705, 1734. In particular, Plaintiff testified that when his bipolar disorder is at its worst, he fades in and out of reality, completely loses touch, and experiences a lot of hallucinations, delusions, and "all sorts of stuff." *Id.* at 1556. Plaintiff testified that he also has "very traditional ADHD," so it is hard for him to concentrate for more than a few seconds, hard for him to finish tasks, and he starts new tasks before finishing the first one. *Id.* at 1557. Plaintiff testified that he has problems concentrating, has panic attacks if he works full-time, and that if he is working part-time, he gets "so upset with everybody and just can't handle working there," that he retreats. *Id.* at 1557-58.

However, Plaintiff previously told Dr. Holttum that he feigned a manic episode in December 2016 "in order to get disability." AR at 2015. Plaintiff additionally told Dr. Holttum that he has "no problem being a layabout" but "realizes his grandma will pass away eventually and he will need to support himself in some way." *Id.* at 2015. Plaintiff told Dr. Budwey that he did not feel manic, but believed he acted manic purposely to get attention. *Id.* at 1953.

Based off the totality of the record, the ALJ reasonably determined Plaintiff's test results from his February 2017 Personality Assessment Inventory conducted by Dr. Budwey "may have indicated careless responding, negative self presentation or malingering." AR at 1530. As such, the ALJ reasonably questioned whether Plaintiff engaged in malingering due to Plaintiff's responses to his treating providers. *Id.* Given Plaintiff's responses to his providers and the overall record, the ALJ reasonably relied on Plaintiff's inconsistent statements to discount his subjective complaints regarding his condition. *See Tonapetyan*, 242 F.3d at 1148.

### 2. *Improvement with Treatment*

Next, Plaintiff argues that the ALJ failed to properly evaluate Plaintiff's testimony regarding his lack of improvement with treatment. (Dkt. # 12 at 9-10.) Medical records showing improvement with treatment provide a clear and convincing reason to reject claims of lack of improvement. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). Impairments that can be controlled effectively with treatment are not disabling. *Warre ex rel. E.T. IV v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

Here, the ALJ reasonably found Plaintiff's mental impairments were managed with medication sufficiently for him to perform work consistent with the assessed RFC. AR at 1527, 1529-30. Plaintiff generally testified that his symptoms did not respond well to his medications. *Id.* at 1560-61. However, Plaintiff had a single episode of decompensation in December 2016 and it occurred only after he stopped taking his medications. *Id.* at 1529, 1937-38. Plaintiff's medications were changed after this episode and the record demonstrates his symptoms responded well to the new medication. *Id.* at 1529, 2004, 2006, 2008. Therefore, the ALJ reasonably relied on Plaintiff's improvement with treatment to discount his subjective complaints regarding his response to treatment. *See Morgan*, 169 F.3d at 599.

*3.     Work History*

Finally, Plaintiff argues that the ALJ failed to properly evaluate Plaintiff's testimony regarding his ability to work. (Dkt. # 12 at 10-12.) The ALJ found Plaintiff's work history undermined his assertion of total disability. AR at 1530. A claimant's poor work history may establish a clear and convincing reason to discount a claimant's subjective complaints. *Thomas*, 278 F.3d at 959 (holding claimant's spotty work history prior to claiming disability constituted a clear and convincing reason for discounting testimony).

In determining whether Plaintiff's work history weakened Plaintiff's claim of total disability, the ALJ relied on Plaintiff's testimony that Plaintiff was able to complete high school, obtain his driver's license, but has barely attempted work. AR at 1695-97, 1912-13, 1952-53. The record demonstrates Plaintiff worked in a call center for a few weeks, did sales in a pawn shop for a few weeks, and worked almost four months at McDonald's. *Id.* at 1581, 1599-72, 1912, 2010. The ALJ additionally relied on Plaintiff's testimony, noted above, that he initially told Dr. Holttum that he "can't handle work," but later told Dr. Holttum has "no problem being a layabout" but "realizes his grandma will pass away eventually and he will need to support himself in some way." *Id.* at 2010-15. Accordingly, the ALJ could reasonably find that Plaintiff's work history raised questions as to whether his continuing unemployment is due to his medical impairments. *See Thomas*, 278 F.3d at 959.

In conclusion, the evidence relied upon by the ALJ in making his findings regarding Plaintiff's testimony was "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401; *Magallanes*, 881 F.2d at 750. Regardless of the evidence suggesting malingering, the ALJ provided clear and convincing reasons, supported

by substantial evidence, for discounting Plaintiff's testimony. *See Burrell*, 775 F.3d at 1136-37; *Molina*, 674 F.3d at 1112.

### C. The ALJ Did Not Err in Evaluating the Lay Evidence

Plaintiff argues the ALJ erred in evaluating testimony of Plaintiff's grandmother. (Dkt. # 12 at 12-14.) To determine whether a claimant is disabled, an ALJ may consider lay witness sources, such as testimony by nurse practitioners, physicians' assistants, and counselors, as well as "non-medical" sources, such as spouses, parents, siblings, and friends. *See* 20 C.F.R. § 404.1527(f). "Where lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," the ALJ's decision should be upheld. *Molina*, 674 F.3d at 1117. If an ALJ chooses to discount testimony of a lay witness, he must provide "reasons that are germane to each witness," and may not simply categorically discredit the testimony. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

Here, the ALJ found the grandmother's observations were similar to the symptoms and limitations described by Plaintiff. AR at 1532. In fact, the record shows the grandmother's testimony largely repeated Plaintiff's testimony. *Compare Id.* at 1556-59, 1734-41 (noting problems with completing tasks, concentrating, following instructions, and getting along with others due to several mental impairments) *with Id.* at 1717-24, 1757-64 (noting same issues and limitations). Moreover, the ALJ gave due regard in discounting the grandmother's testimony given the ALJ's finding that "the overall record demonstrates that with medication, [Plaintiff] has greater ability than [Grandmother] described and would be capable of work consistent with the RFC." *Id.* at 1532. Therefore, the ALJ reasonably found Grandmother's statements were not persuasive for the same reasons Plaintiff's allegations were not persuasive. *Id.* at 1529-30, 1532;

ORDER - 10

*see Molina*, 674 F.3d at 1117. Accordingly, the ALJ provided a germane reason for discounting Plaintiff's grandmother's testimony. *See Dodrill*, 12 F.3d at 919.

### D. The ALJ Did Not Err in the Step-Five Determination

Plaintiff argues the ALJ erred at step five based on an RFC that allegedly failed to consider Plaintiff is unable to perform any type of full-time competitive work due to the side effects of his medications, which causes him to sleep excessively. (Dkt. # 12 at 14-15.) Therefore, Plaintiff argues that the hypothetical question posed to the vocational expert was erroneous because it did not reflect all of Plaintiff's limitations. (*Id.*)

The Court finds Plaintiff's argument unpersuasive. A plaintiff cannot establish step-five findings are incorrect by merely restating his argument that the ALJ improperly discounted other evidence. *See Stubbs-Danielson*, 539 F.3d at 1175-76. An ALJ does not err by excluding limitations from properly discounted medical evidence or subjective complaints that were properly found unreliable. *Bayliss*, 427 F.3d at 1217; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). Because substantial evidence supports the ALJ's assessment of the medical evidence and witness testimony, as previously explained above, the Court finds no error in the assessed RFC or the corresponding hypothetical to the vocational expert. *See Id.* Plaintiff's restating of his argument fails to establish error at step five.

### E. The New Evidence Submitted to the Appeals Council after the ALJ's Determination Does Not Require Remand

Plaintiff argues that the Court should consider new medical evidence submitted regarding Plaintiff's mental health deterioration from January 2018 - April 2018 to determine whether the ALJ's decision is supported by substantial evidence and free of legal error pursuant to *Brewes v. Comm. of Soc. Sec. Admin*, 682 F.3d 1157 (9th Cir. 2012). (Dkt. # 12 at 7-8, 19.) The new evidence consists of medical records from Telecare Thurston Mason Crisis Triage, NAVOS,

ORDER - 11

Virginia Mason, and Hawks Prairie Internal Medicine. AR at 25-507, 508-813, 814-1517, 1538-42. Plaintiff argues the new evidence confirms that, during the relevant period addressed by the ALJ, Plaintiff was more limited by his mental impairments than he was found to be by the ALJ. (Dkt. # 12 at 19.)

Plaintiff's new evidence concerns an acute mental health episode that took place prior to Plaintiff being admitted to Virginia Mason on February 5, 2018. AR at 517-18, 821. At that time, Plaintiff allegedly: took his grandmother's car, drove to Seattle from Olympia, ran out of gas, abandoned the car, and was later found walking barefoot in West Seattle trying to enter random houses while bleeding and disoriented. *Id.* at 519, 821.

Plaintiff was admitted to NAVOS on February 12, 2018. AR at 517-18. While at NAVOS, treatment providers noted that Plaintiff was not taking his medication, or had failed to take the proper amount of medication, prior to this episode of decompensation. *Id.* at 570-71. On February 28, 2018, upon his release from NAVOS, Plaintiff was diagnosed with bipolar disorder, current episode manic, severe with psychotic features, and evaluated a Global Assessment of Functioning score of 50. *Id.* at 793.

On March 6, 2018, Plaintiff was admitted to Telecare Thurston Mason Crisis Triage after reportedly not taking his medications, acting delusional and uncooperative, and telling his grandmother "you're going to die, you made me psychotic, you're going to die." *Id.* at 27. Plaintiff was diagnosed with bipolar disorder I and obsessive-compulsive disorder. *Id.* at 29. Plaintiff was discharged from Telecare Thurston Mason Crisis Triage on April 24, 2018. *Id.* at 27.

The Appeals Council denied Plaintiff's request for review and noted the new evidence "[did] not relate to the period at issue. Therefore, it does not affect the decision about whether

ORDER - 12

you were disabled beginning on or before January 29, 2018." *Id.* at 2. Consequently, the Commissioner argues that the new evidence dated after the ALJ's January 2018 decision should be disregarded because it does not relate to the period on or before the date of the hearing decision. (Dkt. # 14 at 10.)

"[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." *Brewes*, 682 F.3d at 1163. This Court must, in other words, "determine whether the ALJ's finding of nondisability was supported by substantial evidence in the entire record—including any new evidence in the administrative record that the Appeals Council considered—not just the evidence before the ALJ." *Gardner v. Berryhill*, 856 F.3d 652, 656 (9th Cir. 2017). New evidence is relevant to determining whether the ALJ's decision is supported by substantial evidence only where it "relates to the period on or before the date of the hearing decision." 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5).

Here, the Court has reviewed the new medical evidence submitted to the Appeals Council as part of the administrative record. Although the new medical evidence constitutes "new evidence" under *Brewes*, the new medical evidence merely elaborates on the worsening of Plaintiff's mental impairment symptoms disclosed to the ALJ on testimony elicited at the hearing and contained in the medical record. Plaintiff previously had an episode of decompensation in 2016 after Plaintiff stopped taking his medications, which the ALJ considered in evaluating Plaintiff's mental impairments during the relevant period. AR at 1526-29, 1937-38. Because the records from Virginia Mason, NAVOS, and Telecare Thurston Mason Crisis Triage only reflect the worsening of Plaintiff's mental impairment symptoms, are the result of Plaintiff's failure to

take his medication, and are dated after the relevant period of the ALJ's decision, the new medical evidence does not provide a basis to remand the ALJ's decision. *See* 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5).

The Hawks Prarie Internal Medicine medical records submitted by Plaintiff are dated within the relevant period addressed by the ALJ's decision. AR at 1538-42. However, those records demonstrate that Plaintiff scheduled an appointment to establish primary care and include physical exam notes that are irrelevant to the ALJ's analysis. *Id.* Plaintiff additionally failed to address the inclusion of these records in his argument. (*See* Dkt. # 12 at 15-19.) Therefore, the Hawks Prarie Internal Medicine medical records do not concern whether the ALJ's finding of nondisability was supported by substantial evidence and do not support remand. *See Gardner*, 856 F.3d at 656.

In conclusion, although the ALJ did not consider the new medical evidence, the ALJ did consider Plaintiff's testimony, Dr. Wingate's testimony, Dr. Budwey's observations, and Dr. Holttum's observations about Plaintiff's mental health impairments in determining his functional limitation. AR at 1526-28. While the new medical evidence provides more detail regarding Plaintiff's symptoms after an acute period of decompensation, the evidence does not undermine the ALJ's previously analysis of Plaintiff's functional limitations during the relevant period. *See Gardner*, 856 F.3d at 656; 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5). Accordingly, the ALJ's decision should be affirmed.

## V.    CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED and this case is DISMISSED with prejudice.

Dated this 26th day of May, 2020.

_____
MICHELLE L. PETERSON
United States Magistrate Judge

ORDER - 15